**DUNCAN FIRM, P.A.**
James H. Bartolomei III (CA Bar 301678)
Email: james@duncanfirm.com
809 W. 3rd Street
Little Rock, Arkansas 72201
Telephone: (501) 228-7600
Fax: (501) 228-0415

*Attorneys for Plaintiff Michael Grecco Productions, Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> FANDOM, INC., and DOES 1-100, inclusive <br><br> *Defendants*. | **COMPLAINT FOR DAMAGES BASED ON COPYRIGHT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Michael Grecco Productions, Inc., for its complaint against Defendant Fandom, Inc., alleges upon personal knowledge as to its own conduct, and on information and belief based on the investigation of Plaintiff's counsel as to all other conducted alleged herein, as follows.

## I.   INTRODUCTION

1. This is a case about copyright infringement under 17 U.S.C. §§ 101 *et seq.* and 505 *et seq.* caused by Defendant Fandom, Inc. related to the copying, distributing, and displaying of copyrighted Photos (the "Photos") that Plaintiff Michael Grecco Productions, Inc. owns the copyright to or has the right to enforce the copyright of such Photos, and Fandom's failure to reasonably respond to valid

takedown demands related to the Photos, making Fandom liable for copyright infringement.

## II.   PARTIES

2. Plaintiff Michael Grecco Productions, Inc. ("Plaintiff" or "MGP") is a California corporation based in Santa Monica, California in the District.

3. Defendant Fandom ("Fandom") is a Delaware corporation doing business in Los Angeles County and the State of California, including through offices located at 8750 Wilshire Blvd., Beverly Hills, California 90211, distributing and displaying the Photos on its website operated in this District Court's Western Division.  Fandom can be served at Corporation Service Company.

4. DOES 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will ask leave of Court to amend this Complaint and insert the true names and capacities of said defendants when the same have been ascertained. Plaintiff is informed and believes, and upon such alleges, that each of the defendants designated herein as a "DOE" are joint tortfeasors also legally responsible for the events alleged herein, and that Plaintiff's damages as alleged herein were also proximately caused by such defendants.

## III.   JURISDICTION AND VENUE

5. This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101 *et seq*. and 505 *et seq*.

6. This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (copyrights).

7. Venue is proper in this District because Defendant Fandom (1) committed copyright infringement (2) expressly aimed at the forum state of California, (3) and caused harm in this District to Plaintiff.

8. This District and the Western Division are proper venues under 28 U.S.C. § 1391(c) and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred, including the issuance of the takedown notices.

9. The claims alleged also arise out of or relate to Defendant Fandom's regular and systematic activities in this District, and the fact that Plaintiff would not have been injured but for Defendant Fandom's conduct that violated its rights in California, when Fandom distributed and displayed the Photos.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant Fandom has an office found in this District.

11. This Court has *in personam* jurisdiction over Defendant because Defendant availed itself of the privileges of conducting business in this District and the State of California and Defendant incurred a benefit from such infringements of the Photos, including generating revenue from infringement, thus it is reasonable for Defendant to submit to the jurisdiction of this California federal district court.

12. Defendant has regularly and systematically transacted business within California, including having been sued and defended itself in this District for copyright infringement.

13. Defendant transacts business in this judicial district. Plaintiff's principal place of business is in this judicial district, and Plaintiff suffered damages in this judicial District from Defendant's conduct.

14. Defendant is subject to the general and specific personal jurisdiction of this Court because of its contacts with the state of California.

## IV. FACTUAL ALLEGATIONS

**A. The Importance of Copyright and Bundle of Rights**

15. Copyrights are the legal title to intellectual property by which creators of original works protect the moral and economic rights in those works.

16. Section 106 of the Copyright Act (the "Act") grants copyright owners the exclusive public display right and control of the economic value of their work. The Act makes it illegal to publicly perform, publicly display, distribute, or reproduce a copyrighted work except in limited instances, and provides for actual or statutory damages.

17. In 1976, the Act was amended to give creators such as Michael Grecco, as the author of the Photos, an automatic copyright in his Photos.

18. To file suit based on an alleged infringement, that automatic copyright interest must be registered with the United States Copyright Office, which MGP, MGP Inc. or Michael Grecco Photography, Inc. completed prior to filing suit and prior to the alleged infringement of each of the Photos.

**B. Background on the Copyrighted Photos**

19. Plaintiff is a California corporation, with its principal place of business in Santa Monica, California. Plaintiff is a company who owns the rights to exploit photographs authored by Michael Grecco, who is an award-winning photographer and best-selling author recognized internationally for his high-concept imagery, mastery of lighting and powerful connections with subjects. Grecco's extensive body of work encompasses celebrity, fine art, advertising, fashion, portraiture, and editorial photography.

20. The Photos at issue were authored by Grecco, and the right to enforce the copyright in each was assigned in writing to Plaintiff MGP, which has standing to bring this case for each of the Photos, on behalf of Grecco.

21. Michael Grecco has created numerous valuable photographs throughout his career and has authored many iconic images that have generated substantial amounts of money through sales, licensing and publishing. In the marketplace, professional photographs carry tremendous monetary value. MGP earns revenue, in part, from licensing the Photos that Grecco authored. MGP

protects the economic value of the Photos, and when necessary, sues infringers that harm the value of the Photos.

**C. Defendant and infringement of the Photos.**

31. Fandom boasts that it is "The world's largest fan platform and the #1 source for in-depth information on pop culture, entertainment & gaming." See https://www.linkedin.com/company/fandomwikia/. Fandom has more than 350 million users and owns and operates Fandom.com, Giant Bomb, Game Spot, Fanatical, TV Guide and Metacritic. See https://about.fandom.com/what-is-fandom.

32. Much of the content found on Fandom's website is user-generated content, meaning its users publish the content, sometimes exploiting copyrighted photos without permission from copyright owners.

33. User-uploaded photos to Fandom may be subject to the safe harbor provision of the Digital Millennium Copyright Act ("DMCA"), which immunizes liability for copyright infringement *only if* Fandom qualifies as an internet service provider, and only if Fandom complies with a takedown request by a copyright owner (or their agent) to remove infringing materials upon receipt of a demand to do so.

34. Unfortunately, Fandom sometimes fails to honor takedown requests and has continued to facilitate copyright infringement despite DMCA takedown requests, such that Defendant loses any safe harbor provided by the DMCA. In other words, once Fandom is found to not have complied with a valid takedown demand, it becomes liable as a direct infringer of copyright.

35. As set forth below for each of the 30 copyrighted Photos at issue, Plaintiff sent valid DMCA takedown requests in compliance with the DMCA, and Fandom acknowledged each takedown notice, but failed to take action to cease its copyright infringement of the Photos.

36. True and correct copies of instances of Fandom reproducing, publicly displaying, and distributing the Photos without permission, license, or authorization are attached hereto, including the United States Copyright Office registration, the takedown notice and the acknowledgment of receipt of each takedown notice. See Exhibits A through DD. These exhibits are incorporated into the allegations of this complaint.

37. Plaintiff sent valid DMCA takedown demands to the registered DMCA agent for Fandom at copyright@wikia.com.

38. The U.S. Copyright Office's DMCA Designated Agent Directory, available at https://dmca.copyright.gov/osp/, shows that this agent has been effective from May 25, 2021 to February 26, 2024. See https://dmca.copyright.gov/osp/publish/history.html?search=fandom&rid=8852d639c5d1353d51e709c67e88fff7

39. Plaintiff sent valid DMCA takedown emails to Fandom corresponding to the copyright infringement of the Photos at issue in this Complaint as set forth in Exhibit A through DD.

40. Without safe harbor protection under the DMCA, Fandom's reproduction and public display of the Photos results in direct copyright infringement, making Fandom liable for such, even if the initial copying and publication of each of the Photos was allegedly made by one of Fandom's users. Once Fandom was put on notice of infringement through a valid DMCA takedown demand, and failed to takedown each of the Photos, Fandom is liable to Plaintiff for copyright infringement.

41. Further, Fandom's knowledge and prior practice of honoring takedown demands indicates either a willful choice to stop honoring DMCA takedown demands, or alternatively to create unnecessary barriers to "perfect" a takedown demand, such as a "spam" filter that treats each and every single valid takedown notice as spam, even legitimate ones such as the 30 sent by Plaintiff, showing a

1 reckless disregard for its known obligations under the black letter law of the
2 DMCA.

3     42.    Fandom's conduct amounts to willful copyright infringement because
4 the strict and plain language of the DMCA only requires a copyright holder to send
5 notice to the designated agent of a website with: 1) An electronic or physical
6 signature of the owner or of the person authorized to act on behalf of the owner of
7 the copyright interest; 2) Identification of the copyrighted work (or works) claiming
8 what has been infringed; 3) A description of the material that claimed to be
9 infringed, and the location where the original or an authorized copy of the
10 copyrighted work exists 4) A clear description of where the infringing material is
11 located on the website including as applicable its URL so the claimed infringed
12 material can be located; 5) copyright holder's name 6) copyright holder's address 7)
13 copyright holder's telephone number 8) copyright holder's e-mail address; 9) A
14 statement that the copyright holder or agent have a good-faith belief that the
15 disputed use is not authorized by the copyright owner, its agent, or the law; and 10)
16 A statement by copyright holder or agent, made under penalty of perjury, that the
17 above information in the notice is accurate and that the copyright holder is the
18 copyright owner or authorized to act on the copyright owner's behalf. Plaintiff
19 complied with each requirement of the DMCA takedowns sent to Fandom as shown
20 in Exhibits A through DD.

21     43.    Despite Fandom's awareness of the importance of intellectual property
22 rights and liability for the infringement of the same, Fandom infringed Plaintiff's
23 copyrights in the Photos.

24     44.    None of Fandom's users that uploaded the Photos for public display
25 and distribution on Fandom's website(s) had permission, license, authority or a
26 legal defense to do so.

45. At no point did Fandom or the DOE Defendants secure a license for the Photos and at no point did Plaintiff provide any such permission or license for Defendants to exploit the Photos.

46. To the contrary, Plaintiff requested that Defendant cease their copyright infringement. Plaintiff has never sold, licensed, or authorized exploitation of the Photos to Defendant.

47. Plaintiff is informed and believes that Defendant have violated federal law by willfully infringing Plaintiff's copyrights to at least the Photos identified in Exhibits A through DD. Specifically, Defendant reproduced, displayed, and distributed the Photos, and/or derivatives thereof without permission, consent, or license.

48. On information and belief, Fandom has generated revenue through its website where each of the Photos was displayed. The website traffic resulted in substantial ill-gotten commercial advantage and revenue generation for Fandom as a direct consequence of its infringing actions.

49. Fandom's business model is built on exploiting copyrighted works and its users creating "fan pages" of celebrities, films, and television shows.

50. Fandom infringed Plaintiff's copyright in the 30 Photos as is shown in Exhibits A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, V, W, X, Y, Z, AA, BB, CC, and DD, the corresponding United States Copyright Registration for each Photo, the valid DMCA takedown sent Plaintiff, and Fandom's acknowledgement of the DMCA takedown demand.

51. Each Photo displayed by Fandom was unauthorized, with each medium requiring a separate license as Plaintiff only licenses its works under a "rights-managed" licensing model. Discovery will show the full extent unauthorized exploitation.

52. Under the actual damages suffered by Plaintiff, it is entitled to seek a separate award of damages for each medium (website, print, social media channel,

video) for each of the Photos exploited by Defendant Fandom for the equivalent of the fair market value of a license using the industry standard of a one-year license, multiplied by each year each Photo was displayed (with each fraction of a year (i.e., one month) commanding a full, one-year licensing fee under a "rights managed" model as opposed to a "royalty-free" license.

53. Discovery may also show that the Photos were used on other websites or mediums owned, managed or controlled through agents of Defendant Fandom.

54. Under a "rights managed" licensing model for damages, "common sense" has no role in what Defendant Fandom would want to pay, or like to pay, or have the ability to pay *after the fact* of infringement. The willing seller/willing buyer hypothetical calculates damages based on the actual use of the copyrighted work.

55. Plaintiff also can show through discovery that Defendant Fandom directly and/or indirectly earned revenue from ill-gotten gains causally connected from their infringing use of Plaintiff's Photos, as well as the actual damages caused by Defendant.

56. Plaintiff in this 17 U.S.C. § 504(b) action can therefore establish a causal connection and relationship between the infringements, the revenue generated from the infringements, and the monetary remedy sought under the Act, which is neither speculative nor arbitrary.

57. Actual damages should be awarded to Plaintiff from advertising revenue, and the hypothetical-license value, which constitute an acceptable and recognized form of "actual damages" recoverable under Section 504(b).

58. Whether the infringing Defendant might in fact have negotiated with Plaintiff or purchased at the Plaintiff's price is irrelevant to whether hypothetical-license damages are available.

59. Hypothetical-license damages also assume rather than require the existence of a willing seller and willing buyer. The very word "hypothetical" indicates that damages may be awarded in the absence of an actual license.

60. Plaintiff's damages are based on objective considerations of actual use, not on subjective assessments of value, which could vary widely.

61. Plaintiff's damages are also measured and determined by the fair market value of license fees by looking at established rates that are regularly paid by licensees in the market.

62. The calculation of a reasonable licensing fee for use of Plaintiff's Photos must be based on such factors as the type of use, size of use, medium, and circulation.

63. Given Defendant's nature as a business with knowledge of the intellectual property rights, content creation, copyright, trademark, and advertising/marketing experience as content creators and aggregators, Defendant Fandom knew or should have known that the uses of the Photos violated Plaintiff's rights once it received the valid takedown notices, and intentionally or recklessly disregarded those rights, despite acknowledging each valid takedown demand.

64. Despite Fandom receiving valid takedown demands from Plaintiff November 3, 2023 through May 22, 2024, and despite Defendant Fandom acknowledging each takedown, Fandom ignored Plaintiff's valid takedown demands. In wasn't until Plaintiff, through its agent, Michael Grecco, went beyond what was required for a DMCA compliant takedown and emailed Fandom's in-house counsel to seek a remedy for Fandom's infringement of the Photos.

65. On information and belief, Fandom has a policy of treating every single valid DMCA takedown demand as spam, which violates the DMCA.

66. Despite making a demand to be compensated, take down all unauthorized displays and for Defendant Fandom to share a full accounting of all displays and revenue generated from the use of the Photos, Defendant Fandom has

ignored Plaintiff's efforts, denying (in complete opposite of the facts) that Fandom received the valid takedown demands, despite Fandom's copyright agent email responding that each demand had been received.

67. In other words, Plaintiff did everything required by the DMCA and Fandom failed to act, thus losing all safe harbor protections as an online service provider.

68. Without a license agreement between Defendant Fandom and Plaintiff or any no cognizable defense, Plaintiff had no choice but to file suit to protect Plaintiff's intellectual property rights and to seek fair and just compensation for the pirating of Plaintiff's Photos.

## V. CAUSES OF ACTION

### (Infringement of Copyrights (17 U.S.C. §§ 106, 501))

69. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

70. MGP holds to enforce the copyright in each of the Photos shown in Exhibits A through DD, with each Photo registered prior to infringement and prior to filing this suit.

71. Plaintiff never provided authorization to Defendant Fandom or their partners, owners, agents, licensees, affiliates, employees, contractors, customers, or subscribers to use, copy, publicly display, distribute, license, manipulate, or otherwise commercially exploit the Photos.

72. Defendant Fandom has directly infringed Plaintiff's copyright in the registered Photos, by using, copying, publicly displaying, distributing, licensing, manipulating, or otherwise commercially exploiting the Photos, without Plaintiff's authorization, even after receiving valid DMCA takedown notices.

73. On information and belief, Defendant previously maintained and enforced a policy for compliance with the DMCA such that Defendant Fandom knows and understands its obligations pursuant to the Copyright laws as set forth in

the Copyright Act as well as in the Digital Millennium Copyright Act. Accordingly, Defendant Fandoms' failure to comply with its known obligations amounts to willful infringement, either based on a knowing or reckless disregard for the copyright laws and the rights of copyright holders or based on its policy to treat every DMCA takedown demand as spam, forcing Plaintiff to prove otherwise or navigate around the spam filter. This is the equivalent of every single valid DMCA takedown demand going into the registered agents' "junk folder" and Fandom never bothering to check the junk folder for legitimate and valid DMCA takedown demands.

74. Defendant Fandom has caused damages to Plaintiff from copyright infringement of the Photos and which it had the right and ability to take down the Photos after it received the valid DMCA takedowns that were sent to Fandom's copyright agent.

75. Defendants had actual knowledge of the infringement of each of the 30 Photos and materially contributed and caused infringement once Plaintiff sent notice that Defendant was not allowed to display, distribute, and publish the Photos.

76. Defendant Fandom directly, vicariously, and/or contributorily infringed, and unless enjoined, will continue to infringe Plaintiff's copyrights by reproducing, displaying, distributing, and utilizing the Photos for purposes of trade without authorization of or payment to Plaintiff in violation of 17 U.S.C. § 501 et seq. Defendant exercises control over which photos and posts are displayed, curated, and/or elevated on Fandom's website(s). Such curation and elevation proximately cause infringing material to be distributed and published on Fandom's websites and subsequently viewed by users on Fandom and its social media channels.

77. Defendant Fandom is vicariously liable for its respective employees', retailers, contractors' and/or agents' infringement of the Photos as alleged above.

78. Defendant Fandom knew or had reason to know of their respective employees, contractors, and agents' infringement and intentionally induced and/or materially contributed to such infringement.

79. Defendant Fandom knew or had reason to know of, and materially contributed to the infringement of those to whom each copied, distributed and/or displayed the Photos.

80. Defendant Fandom is contributorily liable for their respective employees', contractors', all other Defendants and agents' infringement.

81. Defendant Fandom is secondarily liable for their respective employees, contractors, and agents' infringement.

82. Plaintiff has suffered actual damages as a direct and proximate result of Defendants' direct and secondary infringement.

83. Defendant Fandom has received substantial benefits in connection with the unauthorized reproduction, distribution, and utilization of the Photos for purposes of trade, including by increasing the traffic to their websites and use of their services.

84. Plaintiff is entitled to recover damages based on his actual damages suffered as a result of Defendant's infringements and the disgorgement of Defendant's profits attributable to the infringements, pursuant to 17 U.S.C. § 504(b), which amounts will be proven at trial, as well as any licensing fees that Plaintiff could have received if Defendant secured a valid license to the Photos.

85. Plaintiff has identified at least 30 copyrighted works infringed by Defendant Fandom, which occurred by way of reproduction, public distribution, and public display of the Photo on the Defendants' website, and despite valid takedown notices.

86. Alternatively, pursuant to 17 U.S.C. § 504(c)(2), as a result of Defendants' infringement of Plaintiff's exclusive rights in the Photo, Plaintiff is

1 entitled to recover statutory damages up to a maximum amount of $150,000
2 pursuant to 17 U.S.C. § 504(c)(1) per Photo.

87. Plaintiff is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

88. Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff, unless enjoined by this Court.

89. Therefore, Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive copyrights in the Photos by the Defendant and all persons acting in concert with the Defendant.

## VI.   RELIEF REQUESTED

90. Wherefore, Plaintiff prays for judgment against Defendant Fandom as follows:

    a. Awarding Plaintiff damages derived from the infringing acts, including actual damages for copyright.

    b. Awarding Plaintiff damages derived from the infringing acts, including statutory damages for copyright infringement of up to $150,000 per Photo.

    c. Granting Plaintiff injunctive and other equitable relief enjoining Defendant Fandom, their respective officers, agents, vendors, servants, and employees, and all those acting in concert, from directly or indirectly reproducing, publicly performing, publicly displaying, or distributing the copyrighted Photo to which Plaintiff has exclusive rights.

    d. Disgorging all profits derived by that were obtained as a result of the conduct alleged herein.

    e. Awarding prejudgment interest to the maximum extent permitted by law.

   f. Awarding Plaintiff's attorneys' fees, costs, and expenses.

   g. Awarding such other and further relief that is just and proper.

## VII. JURY TRIAL DEMANDED

91. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a trial by jury of all the claims asserted in this Complaint so triable.

Dated: July 16, 2024

          Respectfully submitted,

          **DUNCAN FIRM, P.A.**

          */s/ James H. Bartolomei III*
          James H. Bartolomei III

          *Attorneys for*
          *Plaintiff Michael Grecco*
          *Productions, Inc.*

- 15 -
COMPLAINT FOR DAMAGES BASED ON COPYRIGHT INFRINGEMENT