James H. Bartolomei (CSB No. 301678)
james@duncanfirm.com
DUNCAN FIRM, P.A.
809 W. 3rd Street
Little Rock, Arkansas 72201
Telephone: (501) 228-7600
Fax: (501) 228-0415

*Attorneys for Plaintiff Michael Grecco Productions, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> FANDOM, INC. and DOES 1-100, inclusive, <br><br> *Defendant.* | Case No: 2:24-cv-05963-MWC-BFM <br><br> **PLAINTIFF MICHAEL GRECCO PRODUCTIONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RECONSIDERATION [DKT. 87]** <br><br> Hearing Date: July 11, 2025 <br> Time: Tuesday, 1:30pm PT <br> Crtrm.: 6A <br> Honorable Michelle Williams Court |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................... 1
II.    ARGUMENT................................................................................... 3
A.  The Court Erroneously Resolved Factual Disputes About Defendant's Knowledge and Willful Blindness                                          4
1.         The Court Improperly Weighed Credibility and Disputed Evidence at the Summary Judgment Stage.................................................................. 4
2.         The Court Misapplied the Willful Blindness Standard by Requiring Direct Evidence of Actual Knowledge. .................................................... 5
3.         The Overlooked Circumstantial Evidence was Not Considered............. 9
B.  The Court Failed to Consider Whether Rule 37(e) Remedies Could Cure Evidentiary Gaps                                                            13
C.  The Court Approved the Reasonableness of an Extra-Statutory "Verification" / "Registration" Requirement     14
III.   CONCLUSION............................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)..................................... 4

*Aug. Image, LLC v. Line Fin., PBC*, No. 2:23-05492 MWC (ASX), 2025 WL
699519, at *2 (C.D. Cal. Feb. 10, 2025)................................................... 4

*Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003)....................................... 4

*City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882 (9th Cir. 2001).... 4

*Ellison v. Robertson*, 357 F.3d 1072, 1076–78 (9th Cir. 2004)............................. 9

*Feltzs v. Cox Commc'ns Cal., LLC*, 562 F. Supp. 3d 535, 539 (C.D. Cal. 2021) .. 4

*Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir. 1991)............................... 4

*Global-Tech Appliances, Inc. v. SEB, S.A.*, 563 U.S. 754 (2011) ......................... 6

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 966 F. Supp. 2d 1031,
1036 (C.D. Cal. 2013) .................................................................. 4

*James River Ins. Co. v. SureFire, LLC*, No. 8:24-CV-01556-JVS-KES, 2025 WL
1287891, at *3 (C.D. Cal. Mar. 6, 2025) .................................................... 5

*Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024) ........................ 9

*Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)................ 4

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 943 (9th Cir.
2011) ................................................................................... 6

*Luvdarts LLC v. AT&T Mobility LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013)  6, 7, 8

*Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007) .................. 8

*SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 698 (9th Cir. 1978)......................... 5

*Tolan v. Cotton*, 572 U.S. 650, 656-657 (2014) ........................................... 4

**Statutes**

17 U.S.C. § 512 ....................................................................... 15

17 U.S.C. § 512(c)(3)............................................................. 3, 14, 15

Civil Local Rule 7-18............................................................ 1, 2, 3, 5, 12

Fed. R. Civ. P. 56 ............................................................. 2, 5, 11, 12

**PLAINTIFF MICHAEL GRECCO PRODUCTIONS, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR RECONSIDERATION**

-ii-

Rule 26(a)(1) ............................................................................................... 11

**Rule 37(e)** .......................................................................................... 12, 13

Rule 59(e) ........................................................................................... 4, 5, 12

**Other Authorities**

Wright, Miller & Cooper, 18B Federal Practice and Procedure: Jurisdiction 2D, § 4478 at 671-72 (2d ed. 2022) .................................................................. 3

## I.    INTRODUCTION

MGPI requests that the Court reconsider its decision granting Fandom's motion for summary judgment based on the failure to consider material facts presented to the Court in opposition to that motion, on the emergence of the effect on certain material facts after the order was entered, and on the need to correct a manifest error of law. *See* Civil Local Rule 7-18(b), (c).

In its decision, this Court ruled that MGPI "failed to establish that Fandom had the necessary knowledge of infringement" and that "Fandom may have been blind to the Takedown Requests, but there is no evidence that Fandom was willfully blind." Dkt. 87 at 7. The Court further found that MGPI failed to raise any genuine dispute of material fact as to whether Fandom (1) "had actual knowledge of infringement of the Asserted Images" or (2) implemented restrictive email intake settings as "a deliberate attempt to avoid acquiring [such] knowledge." *Id*. at 6-7. Reconsideration is warranted because these findings were based on the Court's failure to fully consider evidence from which a reasonable jury could conclude that Fandom was willfully blind. Even if the Court concludes that it weighed all the evidence, how the evidence was mishandled by Fandom emerged that could alter that finding—namely, the Magistrate Judge's ruling on MGPI's spoliation motion and Fandom's conduct.

**First**, the Court failed to credit, and in some instances misapprehended, evidence from which a reasonable jury could plausibly infer Fandom's knowledge of MGPI's Takedown Requests (or Notices) through its willful blindness. *See* L.R. 7-18(c). MGPI presented substantial evidence showing Fandom deliberately configured its Zendesk platform to divert all incoming DMCA takedown emails from unregistered users into a spam folder (the "Suspension Queue" or "Queue"), purposefully and intentionally adopted a policy not to monitor the Queue, and then ignored repeated warnings from Zendesk that emails in Fandom's Queue would be auto-deleted after 14 days. These facts—most undisputed—support an inference

---

that Fandom intentionally structured its intake system to avoid "receiving" and preserving a particular class of takedown notices. However, the Court did not analyze these facts under the governing willful blindness standard and instead appeared to require smoking gun direct proof of actual knowledge—something Ninth Circuit precedent does not demand.

In reaching its conclusion, the Court credited Fandom's evidence and discounted that of MGPI, the non-moving party—without drawing any inferences in MGPI's favor, as Fed. R. Civ. P. 56 requires. But it is the jury—not the Court— that weighs competing evidence. When the record is viewed in the light most favorable to MGPI, it supports a reasonable inference of willful blindness. Reconsideration is warranted so that the Court may evaluate MGPI's evidence under the correct legal standard—willful blindness—rather than disposing of it prematurely under the narrower lens of actual knowledge.

**Second**, with the ruling on MGPI's spoliation motion, the effect of additional facts of Fandom's conduct emerged that materially affects the MSJ analysis. *See* L.R. 7-18(b). The MSJ Order was dated May 9, 2025, and entered on May 12— before oral argument on MGPI's then-pending Rule 37(e) sanctions motion before Magistrate Judge Mircheff, and before the Magistrate Judge's ruling on that motion. While the Court was not obligated to await the Magistrate Judge's ruling, that ruling and the effect of Fandom destroying relevant evidence directly addressed some of the evidentiary gap the Court found dispositive against MGPI: the lack of evidence concerning Fandom's actual knowledge. Specifically, the Magistrate Judge sanctioned Fandom for failing to disclose "the only external corroboration that MGPI submitted a takedown notice at all." Dkt. 90 at 8. Reconsideration is warranted so that the MSJ can be evaluated in light of the Magistrate Judge's findings, any additional forthcoming findings (based on the MSJ Order, the Magistrate Judge declined to resolve core spoliation issues on the merits), and any remedies that may flow from those spoliation findings—including

---

remedies that could affect summary judgment. The Court thus ruled without a complete record and foreclosed the remedial inquiry that could have cured the evidentiary gap it cited as fatal. That timing, and the interdependence of these rulings, warrants reconsideration as an independent basis.

**Third**, reconsideration is warranted based on the manifest error of law that arises from the Court's interpretation of the DMCA to require content owners to perform platform-specific steps before a takedown notice is considered "received" by a service provider, and from potentially far-reaching consequences of that interpretation. Under 17 U.S.C. § 512(c)(3), a compliant takedown request is effective when sent to the service provider's designated agent at the address registered with the Copyright Office. But the Court accepted Fandom's argument that it never received MGPI's Takedown Requests because MGPI failed to complete a platform-specific account "verification" step. MGPI complied with § 512(c)(3); requiring more than the DMCA requires and no support under the DMCA or governing case law. If left to stand, this ruling invites service providers to exploit the DMCA's safe harbor framework by designing internal systems that ensure they never actually "receive" takedown notices, whether by imposing vague extra-statutory steps or by simply refusing to monitor designated email addresses. That is not good-faith participation in the DMCA's safe harbor regime—it's deliberate evasion. Endorsing this approach threatens to gut the notice-and-takedown framework, leaving rightsholders without recourse and rewarding platforms for procedural gamesmanship.

For these reasons, MGPI respectfully submits that genuine disputes of material fact exist regarding Fandom's knowledge of the Requests that only a jury can resolve, and moves that this Court reconsider its summary judgment order.

## II. ARGUMENT

A motion for reconsideration under L.R. 7-18 may be granted where there is "(b) the emergence of new material facts … occurring after the Order was entered,

---

or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.". L.R. 7-18; *cf.* Wright, Miller & Cooper, 18B Federal Practice and Procedure: Jurisdiction 2D, § 4478 at 671-72 (2d ed. 2022) (distilling one ground for reconsideration of prior ruling into a need to correct a clear error or prevent manifest injustice). "Courts in this district have interpreted Local Rule 7-18 to be coextensive with Rule[] 59(e)" (*Feltzs v. Cox Commc'ns Cal., LLC*, 562 F. Supp. 3d 535, 539 (C.D. Cal. 2021)), which may be granted, among other reasons, to correct manifest errors of law or fact upon which the judgment rests (*see Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003)).

Reconsideration under Rule 59(e) "is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks omitted). "Motions for reconsideration are governed by the Local Rules of this district." *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 966 F. Supp. 2d 1031, 1036 (C.D. Cal. 2013). Determining a motion for reconsideration is within this Court's discretion. *See Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir. 1991); *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001).

MGPI respectfully notes that in *Aug. Image, LLC v. Line Fin., PBC*, No. 2:23-05492 MWC (ASX), 2025 WL 699519, at *2 (C.D. Cal. Feb. 10, 2025), this Court recently granted a motion for reconsideration based on the misapplication of law to facts at summary judgment. Reconsideration is likewise warranted here.

## A.    The Court Erroneously Resolved Factual Disputes About Defendant's Knowledge and Willful Blindness

1.    The Court Improperly Weighed Credibility and Disputed Evidence at the Summary Judgment Stage.

It is well settled that courts may not make credibility determinations or weigh competing evidence when deciding summary judgment. *See Tolan v. Cotton*, 572

U.S. 650, 656-657 (2014) ("[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (finding summary judgment inappropriate where resolution depends on credibility determinations). The Central District recently reaffirmed this rule in *James River Ins. Co. v. SureFire, LLC*, explaining that "[a] trial court may not resolve issues of credibility to determine whether a fact is 'genuinely disputed.' … To do so is to improperly weigh the evidence." No. 8:24-CV-01556-JVS-KES, 2025 WL 1287891, at *3 (C.D. Cal. Mar. 6, 2025).

Here, the Court accepted, as dispositive, Fandom's self-serving declarations that spam mitigation—not willful blindness—justified its system design. But the record contained substantial evidence showing that Fandom deliberately routed all unregistered DMCA Requests into an auto-deleting Queue and made an affirmative decision to neither monitor nor preserve those Requests. These factual disputes—centered on intent, credibility, and inference—should be resolved by a jury. *See SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 698 (9th Cir. 1978) (summary judgment improper where "the evidence presented is such that a rational factfinder could decide in favor of either party").

This error was not merely a procedural misapplication of Rule 56's prohibition of courts weighing evidence or making credibility determinations at the summary judgment stage. By short-circuiting the fact-intensive inquiry into Fandom's knowledge and intent, the Court effectively resolved disputed issues that should have been reserved for the jury. These same issues bear directly on the Court's rejection of Plaintiff's willful blindness theory. Reconsideration is therefore warranted under both L.R. 7-18(c) and Rule 59(e).

2. <u>The Court Misapplied the Willful Blindness Standard by Requiring Direct Evidence of Actual Knowledge.</u>

The Court found that Fandom did not set up its email filtering system with the intent to avoid learning about infringement. MSJ Order at 6-7. But in reaching

that conclusion, the Court collapsed the inquiry into a requirement for direct evidence of actual knowledge, misapplying the standard of willful blindness that the Ninth Circuit has expressly endorsed as an independent basis for contributory liability. This analysis resulted in a manifest error of law that justifies reconsideration.

Under *Luvdarts LLC v. AT&T Mobility LLC*, "[w]illful blindness of **specific facts** [can] establish knowledge for contributory liability." 710 F.3d 1068, 1073 (9th Cir. 2013) (emphasis added). This standard, adopted from the Supreme Court's holding in *Global-Tech Appliances, Inc. v. SEB, S.A.*, requires only that a defendant (1) subjectively believed there was a high probability of infringement and (2) took deliberate steps to avoid confirming that fact. 563 U.S. 754, 769–70 (2011). It does not require bad faith, an express intent to allow infringement, or a "smoking gun" admission—only that the defendant had a subjective awareness of a high likelihood of infringement and took steps to avoid learning more. MGPI submitted precisely the kind of circumstantial evidence, as outlined below and the Court overlooked.[1]

While the Court recited that standard, it only selectively applied it to certain facts in the record before it, accepted as true Fandom's post hoc declarations at face value, failed to weigh competing evidence in MGPI's favor, and concluded that MGPI "failed to establish that Fandom had the necessary knowledge of infringement," prematurely ending the inquiry there. Dkt. 87 at 6. That analytical

---

[1] While *Global-Tech* clarified that contributory liability requires actual knowledge or willful blindness—displacing the old "knew or should have known" standard— the same year, the Ninth Circuit recognized that intent may be imputed where a service provider knowingly fails to prevent infringement. *See Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 943 (9th Cir. 2011) ("intent may be imputed" from "a service provider's knowing failure to prevent infringing actions"). This inference-based reasoning is consistent with the willful blindness framework later applied in *Luvdarts*, reinforcing that circumstantial evidence of deliberate avoidance can suffice to establish knowledge.

shortcut overlooked and disregarded a valid and independently sufficient pathway to liability, warranting reconsideration.

The record included undisputed or well-supported facts showing that Fandom deliberately made the decision that: (1) routed all incoming emails, including Takedown Notices, sent its registered DMCA agent, through Zendesk; (2) configured its system in July 2023 to divert emails from unregistered users into a Queue that auto-deleted the Notices after 14 days; (3) made a decision to not monitor that Queue, despite warnings from Zendesk to do so; and (4) failed to preserve or search for those Notices during discovery or even make an inquiry with Zendesk or disclose it as a source of relevant evidence for Fandom's system, which lead to Fandom being sanctioned. This pattern of intentional decisions supports a strong inference that Fandom engineered a system it knew would discard a certain class of legitimate DMCA Notices that gave Fandom knowledge of specific instances of infringement. Yet the Court treated these facts as insufficient absent direct proof of actual knowledge—effectively nullifying the willful blindness standard.

The Court's treatment of willful blindness appears to raise the bar beyond what controlling law requires. Rather than assessing whether Fandom took deliberate steps to avoid confirming suspected infringement, the Court accepted Fandom's spam-mitigation rationale as factually reasonable—resolving questions of credibility, reasonableness and intent exclusively reserved for the jury. The Court dismissed circumstantial evidence of avoidance and failed to weigh MGPI's evidence in the light most favorable to the non-moving party. *See Luvdarts*, 710 F.3d at 1073 (requiring only "active steps to avoid acquiring knowledge," not affirmative misconduct or malice). In effect, the Court treated willful blindness as an inferior form of actual knowledge, rather than a doctrinal substitute for it. That misapplication of law and summary judgment standards justifies reconsideration.

MGPI did <u>not</u> argue that Fandom only had generalized awareness of infringement because as in *Luvdarts*, it requires "more than a generalized knowledge … of the possibility of infringement." *Id*. Rather, MGPI presented evidence that Fandom anticipated receiving DMCA Requests to copyright@wikia.com, knew its July 2023 Zendesk configuration would filter and auto-delete them unless the sender registered, and deliberately refused to monitor the Queue—even after litigation commenced. Dkt. 41-2 ¶¶ 8, 9-12, 33, 35. That is not generalized awareness; it is deliberate avoidance of known risks. *Luvdarts* makes clear that such conduct satisfies the knowledge prong through willful blindness.

A more complete application of the standard presented in *Luvdarts* would have considered both the facts Fandom concedes and those genuinely in dispute. Fandom does not contest that it routed all incoming emails, including DMCA Takedown Notices sent to its designated agent through the Zendesk system. Nor does it dispute that, in July 2023, it reconfigured that system to auto-delete messages from unregistered users after 14 days, or that it made a deliberate decision not to monitor the Queue where those Notices were filtered. Dkt. 64 at ¶12, 25, 35 What is disputed is whether Fandom reasonably believed that all DMCA senders would register with its system, and whether—given its knowledge of Zendesk's deletion policies—its refusal to monitor the Queue constituted deliberate avoidance of infringement. These facts, taken together, support a plausible inference of willful blindness. The Court's ruling, however, declined to address them through the lens of that standard and instead evaluated the record solely through the prism of direct actual knowledge resolving inferences in Fandom's favor. That approach misapplies controlling precedent and warrants reconsideration.

MGPI introduced circumstantial evidence from which a reasonable jury could infer willful blindness—an inference the Court was not permitted to resolve at the summary judgment stage. *See Microsoft Corp. v. Rechanik*, 249 F. App'x

476, 479 (7th Cir. 2007) (defendant's "ostrich-like business practices"—including purchasing from unauthorized distributors, failing to ask whether goods were authentic, and not examining them—"amount to willful blindness, which is sufficient to show he had the intent necessary to be a contributory infringer"). The record, based on admissible evidence, shows that Fandom made a series of deliberate choices—some conceded, other disputed—about how to configure and operate its DMCA intake system. A jury could reasonably conclude that these decisions amounted to a calculated effort to avoid learning the truth about Takedown Notices submitted by unregistered senders to Fandom's registered DMCA agent email address for reporting alleged infringements on the platform.

That is precisely the kind of inference the willful blindness doctrine permits—and precisely the kind of credibility and intent determination that belongs to the jury. Courts have acknowledged that systemic failures in DMCA processing—particularly those resulting from structural or design-based barriers to receipt—may bear on whether a defendant acted with the requisite knowledge under the Copyright Act.[2] Reconsideration is warranted so these questions can be resolved on a full evidentiary record, not foreclosed by premature adjudication.

3.    The Overlooked Circumstantial Evidence was Not Considered.

"Intent can rarely be shown directly," so courts routinely permit circumstantial evidence to establish it. *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024). MGPI respectfully submits that the following material facts

---

[2] *Cf. Ellison v. Robertson*, 357 F.3d 1072, 1076–78 (9th Cir. 2004) (finding that AOL's failure to update its DMCA agent's contact information and the resulting failure to receive takedown notices supported a contributory infringement claim under the then-applicable "knew or should have known" standard). Though the standard has since been narrowed to whether one took deliberate steps to avoid confirming what it strongly expected, the factual predicate—failure to configure one's system to "receive" DMCA notices—remains probative of how design choices can defeat statutory compliance and prove knowledge.

were overlooked and not credited, despite supporting a factual record that a jury could plausibly find willful blindness.

As Magistrate Judge Mircheff noted at the May 12 discovery abuse hearing, Fandom was not forced to use Zendesk to process its incoming DMCA notices—it *chose* to treat emailed Takedown Requests like any customer support email, route them through that platform and apply restrictive filtering settings. The Court's ruling did not credit the circumstantial evidence flowing from that choice—including Fandom's knowledge of its deletion policy, its decision not to monitor the Queue, and its awareness that valid Requests were being diverted and ignored that went to the Queue. MGPI is entitled to have a jury to decide whether it is unreasonable to monitor a spam folder where DMCA Requests may be sent. These facts were not only probative of Fandom's knowledge and intent, but they were also well-supported in the record. A jury could reasonably weigh them and conclude that Fandom deliberately avoided addressing infringement.

The Court failed to consider the following specific facts, each of which supports a reasonable inference of Fandom's willful blindness:

1.    Fandom makes the decisions on how the options are configured on its Zendesk platform. *See* Dkt. 64 ¶ 72 (Bart. Decl. at ¶4 (Marbulcanti Dep. 58:8-14).

2.    Fandom's Zendesk account requires users to register, which means that Fandom's users must verify their e-mail addresses and also create a password to submit DMCA takedown requests. *Id.* at 74 (Bart. Decl. at ¶4, (Marbulcanti Dep. 68:12- 25), ¶7 (ZENDESK000020), ¶ 13; (FANDOM_000478-79).

3.    Fandom does not monitor its Zendesk suspension queue even though it has access to it. *Id*. at ¶80. Bart. Decl. at ¶3 (Desmond Cussen Dep. 81:11-13).

4.    If a DMCA takedown notice email is sent to copyright@wikia.com that e-mail goes into Fandom's suspension cue and nobody from Fandom looks at it, it remains in limbo unless Fandom decides to accept it or reject it which Fandom

has the ability to manually restore e-mails from the suspended cue. *Id.* at ¶81. Bart. Decl. at ¶4 (Marbulcanti Dep. 95:6 –19).

5.    Fandom can recover an e-mail from its suspension cue by visiting the Fandom's Zendesk UI [user interface] that it has access to. *Id.* at ¶ 82. Bart. Decl. at ¶4 (Marbulcanti Dep. 96:3-7).

6.    Fandom knew it had the ability to check the suspension queue in 2023 and 2024 because the suspension cue was a visible feature in its Zendesk system. *Id.* at 83. Bart. Decl. at ¶4 (Marbulcanti Dep. 97:9-23)).

7.    The suspended tickets view is visible to any Fandom agent with access to all emails in the suspended queue. *Id.* at ¶86.

8.    Zendesk recommends that Fandom review the suspended ticket queue frequently because if nobody at Fandom reviews a suspended ticket, it is automatically deleted after 14 days. *Id. a*t ¶87.

9.    Zendesk recommends implementing a process for reviewing suspended e-mails frequently because any e-mails that remain in the suspended tickets queue for 14 days without review are automatically deleted and this recommendation is emphasized at least twice by Zendesk. *Id.* at ¶90-91.

10.    Fandom did not implement any process for reviewing the suspended e-mail queue from November of 2023 through the end of May 2024. *Id.* at 92.

11.    The cause of Plaintiff's Notices being sent to Fandom's suspension queue is because each Notice was submitted by an unregistered user, Plaintiff, and the user needed to sign up, as is shown on Fandom's Zendesk log. *Id.* at 101. Fandom disputes this evidence, but the Court weighs this evidence in dispute in favor of Fandom which is contrary to Rule 56.

12.    Fandom was unsure about having issues with spam in its account from e-mails sent to copyright@wikia.com. *Id.* At 112.

13.    Fandom never checked the suspension queue from November 2023 through May 2024; but testified that large portion of the emails in the suspended queue are spam. *Id.* at 116. Bart. Decl. at ¶7 (ZENDESK000020)

14.    Fandom received Plaintiff's DMCA Notices. Id. at 116.  Fandom disputes that it received the Notices by reframing facts in dispute with the Court appearing accept those disputed facts contrary to Rule 56.

15.    Fandom did not identify Zendesk as a source of relevant information in its Rule 26(a)(1) disclosures and never supplemented its disclosures, despite repeated prompts.  Dkt. 90.

16.    Fandom claimed it "lacked sufficient knowledge" to authenticate or confirm the contents of its data on Zendesk log—even though it owned and controlled that account and data. This undermines its credibility and supports an inference of willful blindness. Dkt. 66-17.

17.    Finally, there is evidence that Plaintiff was "verified" by Fandom's DMCA takedown system prior to May 2024." *Id*. At 123 (Grecco Decl. at ¶12 (GRECCO-000015).  Fandom disputes this evidence with a longwinded explanation as to why this inaccurate, and again the Court either missed this material evidence that Plaintiff had been previously "verified" or accepted Fandom's protestation about this evidence which is contrary to Rule 56.

The Court misapplied Rule 56 by improperly weighing MGPI's evidence or failing to weigh it at all. Although the Court recited the doctrine of willful blindness, it treated that standard as insufficient absent direct evidence of actual knowledge, rather than applying it as a doctrinal substitute for that element under Ninth Circuit precedent. Many of the facts outlined above are either undisputed or supported by competent record evidence, yet the Court credited Fandom's explanations without viewing the record in the light most favorable to MGPI, as Rule 56 requires.

Accordingly, reconsideration is warranted under Rule 59(e) and L.R. 7-18(c)

because the Court failed to consider material facts and applied an incorrect legal standard, resulting in a ruling that prematurely resolved disputed issues properly reserved for the jury.

## B. The Court Failed to Consider Whether Rule 37(e) Remedies Could Cure Evidentiary Gaps

The Court granted summary judgment before Magistrate Judge Mircheff issued her findings on Plaintiff's pending motion under Rule 37(e) for sanctions related to spoliation and discovery misconduct. That timing is consequential. On May 15, 2025—just days after the summary judgment Order—the Magistrate sanctioned Fandom for failing to timely disclose Zendesk as a potential source of relevant evidence. Specifically, she found that Zendesk's metadata logs (which is Fandom's data) were "the only external corroboration that MGPI submitted a takedown notice at all," and would be relevant at trial as evidence of Fandom having *received* the Requests. Dkt. 90 at 8. When the Court issued its Order on May 9 (entered on May 12), it had not yet received the Magistrate's ruling or the benefit of oral argument on the sanctions motion.[3] The evidentiary record was thus incomplete.

Moreover, the Magistrate's ruling itself repeatedly references the May 9 Order and is clear that the summary judgment order constrained the available relief. Judge Mircheff noted that the Court had already found that no one "at Fandom reviewed, or otherwise knew about" [MGPI's] Takedown Requests," and cited that conclusion as a reason to deny further evidentiary sanctions. *Id.* at 7.

In other words, by ruling first, the Court not only decided the case without the full record—it also limited the range of curative relief available to the Magistrate Judge. Because the Court had already reached a dispositive finding on Fandom's supposed lack of knowledge, the Magistrate treated that finding as foreclosing further evidentiary sanctions.

---

[3] The transcript has been ordered but has not yet been received.

Reconsideration is warranted to ensure that the summary judgment ruling is evaluated on a complete record, including the Magistrate's findings on Fandom's discovery misconduct. At minimum, the Court should assess whether curative measures under Rule 37(e)—such as a permissive inference or instruction[4]—could mitigate the evidentiary gap it previously deemed fatal.

## C.    The Court Approved the Reasonableness of Fandom's Extra-Statutory "Verification" / "Registration" Requirement

As noted above, the Court appears to have credited Fandom's framing that it never legally "received" Plaintiff's DMCA Requests because the sender failed to complete a Fandom-imposed "verification" step. But § 512(c)(3) defines a compliant Takedown Request as one that is delivered to the service provider's designated agent at the address registered with the Copyright Office.  No statute or case to date imposes a requirement that the sender register an account, verify their email address, adhere to infringer's terms of use, subject oneself to a data-hungry privacy policy (which is the subject of other pending litigation against Fandom) or complete an internal validation process.

MGPI is unaware of any court having endorsed the view that legal receipt under the DMCA can ever be conditioned on a provider's own private prerequisites. Yet, by suggesting that Fandom's system could disregard Requests

---

[4] Rule 37(e) expressly authorizes courts to impose curative measures when relevant ESI is lost or withheld—even without a finding of intent to deprive. While the Magistrate ultimately issued only a limited sanction, her ruling made clear that Fandom withheld the only external metadata corroborating that MGPI's notices were submitted. Had the Court received that finding beforehand, it might have considered whether a permissive inference, a curative instruction, or simply allowing Plaintiff to argue that Fandom's system configuration was unreasonable could have addressed the evidentiary shortfall. These are precisely the kinds of remedial tools Rule 37(e)(1) reserves for the factfinder. At a minimum, reconsideration is warranted to determine whether Fandom's discovery violation—and the resulting untimely revelation of the only corroborative metadata—materially affected the outcome at summary judgment.

unaccompanied by a verification, account registration, or acceptance of legally binding terms and conditions, the Court effectively endorsed, as reasonable, additional procedural requirements not found in the statute or a single case. This interpretation expands the meaning of "receipt" beyond the plain language of §512(c)(3).

Such an interpretation erodes the DMCA and emboldens providers. If allowed to stand, it would enable service providers to ignore otherwise valid Requests by designing systems that block or discard them—undermining the statute's balance between liability protection and rights enforcement. Reconsideration is warranted to correct this manifest error of law and reaffirm that legal receipt under § 512 turns on delivery to the designated agent—not on compliance with extra-statutory conditions set by the service provider.

## III. CONCLUSION

For the foregoing reasons, MGPI respectfully requests that the Court reconsider its summary judgment Order, and hold that:

1.     Material facts remain in dispute from which a reasonable jury could infer willful blindness regarding Fandom's knowledge of the Takedown Requests;

2.     Fandom's destruction (even in the absence of intent to deprive) of relevant evidence concerning the Requests may warrant an adverse inference or other curative relief under Rule 37(e); and

3.     The DMCA requires only that Takedown Requests be delivered to the designated agent at the registered email address—without any further registration or verification or platform-specific steps to perfect such Requests. *See* 17 U.S.C. § 512(c)(3).

Dated: May 27, 2025

Respectfully submitted,

DUNCAN FIRM, PA

*/s/ James H. Bartolomei III*

James H. Bartolomei

*Attorneys for Plaintiff*

*Michael Grecco Productions, Inc*

## L.R. 11-6.2. Certificate of Compliance

Counsel for Plaintiff Michael Grecco Productions, Inc. certifies that Plaintiff's memorandum complies with the type-volume limitation of L.R. 11-6.1. This certification is made relying on the word count of the word-processing system used to prepare the document. Plaintiff's counsel further certifies that Plaintiff's memorandum contains 4,980, and complies with the word limit of L.R. 11-6.

Dated: May 27, 2025          DUNCAN FIRM, P.A.

*/s/James H. Bartolomei III*

James H. Bartolomei III

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

Notification was sent electronically on May 27, 2025 to:


Honorable Judge Michelle Williams Court

United States District Court

Central District of California

And served on:

All Counsel of Record on the ECF


_s/ James H. Bartolomei III_

James H. Bartolomei