James H. Bartolomei III (CSB No. 301678)
james@duncanfirm.com
DUNCAN FIRM, P.A.
809 W. 3rd Street
Little Rock, Arkansas 72201
(501) 228-7600

Peter E. Perkowski (SBN 199491)
peter@perkowskilegal.com
PERKOWSKI LEGAL, PC
515 S. Flower Street, Suite 1800
Los Angeles, California 90071
(213) 340-5796

*Attorneys for Plaintiff Michael Grecco Productions, Inc*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>FANDOM, INC. and DOES 1-100, inclusive,<br><br>Defendant. | Case No: 2:24-cv-05963-MWC-BFM<br><br>**DECLARATION OF MICHAEL GRECCO IN SUPPORT PLAINTIFF'S OPPOSITION TO DEFENDANT FANDOM'S MOTION FOR ATTORNEY'S FEES**<br><br>Hearing Date: July 11, 2025<br>Time: 1:30 pm PT<br>Crtrm.: 6A<br>Honorable Michelle W. Court |

Michael Grecco, hereby declares as follows:

1. I am CEO, a beneficial owner and operator and have the authority to speak on behalf of Plaintiff Michael Grecco Productions, Inc. ("MGPI") in this



Doc ID: 5ea0937050c7bde6706211624c1a20273810cff8

action against Defendant Fandom, Inc. I have personal knowledge of the facts alleged in this dispute and personal knowledge and if called to testify as a witness, would be competent to testify as follows and offer this declaration in support of MGPI's Opposition to Fandom's Motion for Attorney's Fees (the "Motion").

2. Fandom.com displayed copies of 28 of MGPI's Images without authorization, and it is my understanding that Fandom generated several thousand dollars from advertising on the Fandom fan pages. I also believe the indisputable evidence shows that Fandom made money off of the Images and, despite claiming to not have received the takedown Notices, that Fandom did receive them but never looked at them or even looked *for* them, even though Fandom knew that Notices were probably there.

3. The Images appearing on Fandom.com consist of well-known film and television characters. All are valuable copyrighted works, and they generate license fees from typically around $2,500 to as much as $40,000 per license. MGPI is therefore highly motivated to not just remove unauthorized internet uses but also to obtain compensation for those uses when the Images are not expeditiously removed from an OSP that were originally uploaded by the OSP's third party users—compensation that is commensurate with the licensing value of the image *and* that deters future infringements. In my experience, that is not always possible to accomplish without resorting to litigation when an OSP fails to remove the Images.

4. MGPI has a portfolio of more than 1,000,000 valuable images that I created since 1978, including unique, high-value portraits of public figures, actors, and celebrities. I am an internationally renowned celebrity portrait photographer known for iconic portraits of Serena Williams, Chris Rock, Will Smith, Martin Scorsese, Robert Duvall, Johnny Cash, Will Ferrell, Mel Brooks, Ben Stiller, Penélope Cruz, Jet Li, Bill Murray, Joaquin Phoenix and Gwen Stefani, among



Doc ID: 5ea0937050c7bde6706211624c1a20273810cff8

many others. MGPI must defend its exclusive rights in all 1,000,000 of these images—a daunting and expensive task, especially when OSPs like Facebook, Instagram, TikTok, Twitter and Fandom host MGPI's images without consent. Failing to do so degrades the licensing value in the images, in that licensors may not buy, or may pay less, for images that are ubiquitous on the internet.

5. In fact, MGPI's images are rampantly infringed and pirated by websites, like Fandom.com, that are attracted by the quality and subject matter of my works and therefore use them to illustrate and attract viewers to their content, thus earning revenue. To deal with this rampant infringement, MGPI has had to hire and pay contractors to find, remove, and obtain compensation for the many thousands of unauthorized uses of MGPI's images. This work allows MGPI to maximize the economic value of the images, fund the creation of new Images and projects, and to pay the people who assist in these efforts.

6. Policing copyright pirates such as Fandom and its users often requires MGPI to engage in a time-intensive, costly game of never-ending Whack-A-Mole: for each infringement found and DMCA takedown notice sent, more infringements pop up. Each takedown notice sent requires MGPI's contractors to first locate infringed images, which are often buried in the billions of pages on the internet, then assemble all the necessary information to send in a takedown notice, such as finding the copyright agent for each website. I am generally not aware about sites not taking down an image until my staff informs me. MGPI has a policy to enforce its rights, motivated within the spirit and letter of the law, resorting to filing lawsuits only if there is a good faith, meritorious basis in fact and law, vetted by competent legal counsel.

7. In addition, MGPI sends DMCA notices to online service providers ("OSPs") like Fandom using contractors it has hired, with the genuine good faith belief and a goal of having the Images taken down from infringing websites and



Doc ID: 5ea0937050c7bde6706211624c1a20273810cff8

without the need to seek compensation from the OSP if the images are expeditiously removed. Whether to seek compensation from the user-generated direct infringers is decided on a case-by-case basis. Over time, MGPI has sent over 800 DMCA takedown notices to numerous OSPs; resulted in OSPs taking down the images expeditiously without requiring any monetary demand or ripening into litigation. Out of these OSPs, not a single OSP required MGPI to register an email address, independently verify MGPI's email identity, create an account with the OSP, create a password, or bind MGPI to the OSP's terms of use or privacy policy.

8. Most of the DMCA takedown notices that MGPI sends do cause the OSP to remove MGP's images expeditiously and I am not personally aware of when this happens. When OSPs fail to take down images, MGPI must also seek compensation for the use, for several reasons. First, there was value in the use of MGPI's images even if such use is no longer occurring. MGPI has a robust licensing operation; licensing its images for online uses earns MGPI thousands of dollars per image. In addition, large OSPs like Fandom make income off infringements, but even if they do not, they received a benefit from the use of MGPI's images. Allowing infringers to avoid a claim merely by removing the images would reward the infringement and encourage more infringements. Also, it is not until suit is filed and discovery conducted that MGPI is able to confirm and verify whether images were uploaded and displayed by the OSP itself (through employees), through its registered users or whether those users are also employees of the OSP masquerading as third party users to create content that is infringing and generating more income for the OSP.

9. Second, money earned (a bit more than 50% on any given year) through MGP's infringement claims fund its operations, allowing it (through me) to create new creative works, thus serving the interests of the Copyright Act.



Doc ID: 5ea0937050c7bde6706211624c1a20273810cff8

Such revenue is also necessary to pay for the ongoing work of policing rampant online infringement of MGPI's large library of images. That work could not happen if MGPI did not seek compensation for the devaluation of its images, in addition to removal of infringing content.

10. In sending DMCA takedown notices, MGPI uses a form email that was drafted by a lawyer to comply with the DMCA's requirements, and it emails notices only to an OSP's designated email address to avoid a defective, void notice. For instance, before this policy was implemented, MGPI had previously sent DMCA notices in the past to non-designated email addresses and the notices turned out to be invalid. Now, MGPI tries to strictly comply with the DMCA.

11. In this case, MGPI's contractors sent the Notices and received an Acknowledgement Email from Fandom but maintain that none clicked on any of the links within 14 days. I do not believe anyone at MGPI clicked on any verification link from Fandom for a few reasons. MGPI had a policy that and I objected to being required to register with an OSP and create an account because it would result in unwanted email, spam, or solicitations. I also did not want to become a use or customer over concern of being bound by the OSP's Terms of Use, which could have included an arbitration clause, or of having MGPI's data monetized and exploited by the OSP under its Privacy Policy. I reasonably believed in good faith that neither registration nor verification was required to "perfect" the Notices and to provide everything the law required to provide Fandom specific knowledge of infringement.

12. When I attempted to negotiate with Fandom in house counsel in May 2024, I presumed my communications, on behalf of MGPI, even if aggressive and pointed, to be protected as privileged settlement discussions. I was negotiating in good faith, relying on what MGPI knew at the time that the Notices were sent to Fandom and received by Fandom when I first contacted Des Cussen. I believed



Doc ID: 5ea0937050c7bde6706211624c1a20273810cff8

Fandom had received the Notices after my staff alerted me about Fandom's failure to act, and Fandom had knowledge of infringement, triggering liability, and MGPI was motivated to seek enforce the copyrights in the Images to protect the value of the Images against Fandom's infringement so that my company could generate revenue and allow it to continue to create new, original images for society to enjoy and benefit from. On behalf of MGPI, I was trying, in good faith, to resolve the claim pre-litigation, which is far more economical and practical than rushing to file a lawsuit. What I knew at that time in May 2024 was that I believed the evidence we had was that Fandom received the Notices, and because they received them and failed to takedown the images expeditiously, Fandom was liable. Fandom denied receiving the Notices at that time, which MGPI had a good faith belief to challenge what turned out be a misrepresentation.

13. MGPI lawfully seeks to hold copyright pirates accountable, such as Fandom. Even though MGPI sued in this case for infringement of Images on Fandom's site and Fandom was found not to be liable because it claims no knowledge, Fandom now seeks attorney's fees and costs, and they have resorted to attacking me personally and my business. It is offensive, derogatory and demeaning for Fandom and its lawyers to accuse my company and me as "serial litigants" without having any personal knowledge or proof that any case MGPI has ever filed was done so for the wrong reasons, was found to be frivolous, was filed for unethical reasons, was filed in bad faith, was an objectively unreasonable claim, was motivated by something other than that Copyright Act advances and promotes, was without merit, was filed for vexatious reasons, was filed to "extract" a nuisance value settlement or filed to extract the cost of litigation or for any reason **other than to advance and promote the goals of the Copyright Act, protect my company's Images, and take full legal advantage of the exclusive bundle of rights that Congress made available to copyright holders**. My



Doc ID: 5ea0937050c7bde6706211624c1a20273810cff8

company has never had a copyright infringement case dismissed on the merits that wasn't later reversed on appeal in my company's favor and I intend to pursue an appeal on the Court's order because I respectfully believe the Court missed key relevant evidence that Fandom received the Notices and failed to takedown the images expeditiously, making it liable.

14. I have a personal history of fighting for the rights of content creators that advances and promotes the goals of the Copyright Act for the good of the public, both through litigation as my company as a plaintiff and through public advocacy. A recent court opinion noted that "Grecco is also an advocate for copyright enforcement. He educates photographers on ways to protect their intellectual property rights and serves on the Advocacy Committee of the APA, which 'fights for the rights of image creators.' ... Grecco dedicates his time and money to finding instances of copyright infringement and subsequently enforcing his rights under the Copyright Act." *Michael Grecco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 493 (S.D.N.Y. 2018).

15. I am the founder of The American Society for Collective Rights Licensing, a leader in the administration and distribution of collective revenue from around the world for U.S. photographers, illustrators and rights holders of published works. I have spoken before Congress regarding protecting artists and copyrights. I was Chairman of the Board for Advertising Photographers of America/Los Angeles and served as National Executive Vice President and Chairman of its Advocacy Committee. My other affiliations include being a board member of Editorial Photographers, former member of Canon's Explorers of Light Program, and since 2001, a Hasselblad Master Photographer and Lecturer for the Kodak Mentor program. I actively participate in these organizations to protect and advance copyrights for photographers such as myself for the good of the public, motivated to hold infringers accountable.



Doc ID: 5ea0937050c7bde6706211624c1a20273810cff8

16. Even though I respectfully disagree with the Court's order dismissing this case and have asked my lawyers to challenge the decision on appeal, if Fandom is awarded $600,000+ of fees and costs, or any significant amount, this will not only have devastating effect on MGPI, as my business and main source of income, it will deter and chill MGPI from pursuing meritorious infringement claims, create new works that promote the Copyright Act, especially against what appears to be billion dollar tech company with unlimited resources such as Fandom, which employed 8 lawyers on this case and funded by an insurance carrier. If fees and costs are awarded to Fandom, this defeats the purpose of the Copyright Act, deterring MGPI from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful, especially difficult claims that deal with novel issues such as this case.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 20, 2025.

Michael Grecco

Michael Grecco



Doc ID: 5ea0937050c7bde6706211624c1a20273810cff8

# CERTIFICATE OF SERVICE

Filed electronically on this June 20, 2025, with:

United States District Court CM/ECF system

Notification sent electronically via the Court's ECF system to:

Honorable Michelle W. Court
United States District Court
Central District of California

JENNIFER KELLY (CSB No. 193416)
jennifer@tyzlaw.com
RYAN TYZ (CSB No. 234895)
ryan@tyzlaw.com
CIARA MCHALE (CSB No. 293308)
ciara@tyzlaw.com
CHIEH TUNG (CSB No. 318963)
chieh@tyzlaw.com
TYZ LAW GROUP PC
4 Embarcadero Center, 14th Floor
San Francisco, CA 94111
Telephone: 415.868.6900

Attorneys for Defendants

On this June 20, 2025

**DUNCAN FIRM, P.A.**

*/s/James H. Bartolomei III*
James H. Bartolomei III



Doc ID: 5ea0937050c7bde6706211624c1a20273810cff8

Dropbox Sign

Audit trail

| | |
|---|---|
| **Title** | 2025.06.20 Grecco Declaration FINAL.pdf |
| **File name** | 2025.06.20%20Grec...ation%20FINAL.pdf |
| **Document ID** | 5ea0937050c7bde6706211624c1a20273810cff8 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was requested from app.clio.com**

## Document History

| | | |
|---|---|---|
| SENT | **06 / 21 / 2025**<br>00:43:51 UTC | Sent for signature to Michael Grecco (mg@grecco.com) from james@duncanfirm.com<br>IP: 104.186.53.83 |
| VIEWED | **06 / 21 / 2025**<br>00:50:03 UTC | Viewed by Michael Grecco (mg@grecco.com)<br>IP: 47.181.73.69 |
| SIGNED | **06 / 21 / 2025**<br>00:50:17 UTC | Signed by Michael Grecco (mg@grecco.com)<br>IP: 47.181.73.69 |
| COMPLETED | **06 / 21 / 2025**<br>00:50:17 UTC | The document has been completed. |