JENNIFER KELLY (CSB No. 193416)
jennifer@tyzlaw.com
RYAN TYZ (CSB No. 234895)
ryan@tyzlaw.com
CIARA MCHALE (CSB No. 293308)
ciara@tyzlaw.com
CHIEH TUNG (CSB No. 318963)
chieh@tyzlaw.com
TYZ LAW GROUP PC
1 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: 415.868.6900

Attorneys for Defendant
Fandom, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> FANDOM, INC. and DOES 1-100, inclusive, <br><br> Defendant. | Case No: 2:24-cv-05963-MWC-BFM <br><br> **REPLY DECLARATION OF CIARA McHALE IN SUPPORT OF DEFENDANT FANDOM, INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS** <br><br> Date: July 11, 2025 <br> Time: 1:30 pm <br> Courtroom: 6A <br><br> Complaint Filed: July 16, 2024 |

I, Ciara McHale, hereby declare as follows:

1. I am an attorney at law licensed to practice in the State of California and the Central District of California. I am an attorney at the law firm of Tyz Law Group PC, attorneys for Defendant Fandom, Inc. in this action. I have personal knowledge of the matters set forth in this declaration in support of Fandom's reply in support of its motion for attorneys' fees and costs and, if called to testify as a witness, would testify competently and under oath to the same.

2. Attached as **Exhibit 17** is a true and correct copy of a report derived from Tyz Law Group's contemporaneous time records of entries for this litigation for the period of May 23, 2025 (the day of the filing of Fandom's Motion for Attorneys Fees and Costs (the "Motion"), which was not included in the Motion or my declaration supporting it) through June 26, 2025 (the day before the filing of Fandom's reply). Below is a table of the time and associated fees sought for each attorney (at their hourly rate set forth in my declaration in support of Fandom's Motion, Dkt. 94 ¶¶ 15–21) from Exhibit 17. As we did with the fees requested in Fandom's Motion, we have conducted a review of these records in preparing this reply, to remove and/or reduce time entries for duplicative work, inefficiencies, and other similar culling, including omitting and not seeking recovery for time billed by a few attorneys firm who provided discrete support during this period.

| Timekeeper | Hours | Hourly Rate | Fees |
|---|---|---|---|
| Ryan Tyz | 0.0 | $925 | $0.00 |
| Jennifer Kelly | 7.7 | $925 | $7,122.50 |
| Ciara McHale | 47.6 | $830 | $39,508.00 |
| Chieh Tung | 0.0 | $685 | $0.00 |
| Stephanie Alvarez Salgado | 0.0 | $490 | $0.00 |
| Jonathan Downing | 0.0 | $490 | $0.00 |
| Tiffany Weger | 3.1 | $320 | $992.00 |
| TOTAL | 58.4 |  | $47,622.50 |

It is my view that the work performed by Tyz Law Group reflected in Exhibit 17, like that reflected in Exhibit 8 to my declaration in support of Fandom's Motion,

was reasonable given the motion practice during this time, including Plaintiff's filing of a reconsideration motion without basis under the Local Rules and responding to arguments in Plaintiff's opposition to Fandom's Motion. Again, Again, Tyz Law Group exercised sound billing judgment and assigned tasks to personnel who could handle them most efficiently, including to the appropriate attorneys when possible. Fandom reserves the right to seek additional fees after the filing of its reply in support of the Motion.

3. I have reviewed Plaintiff's arguments in its opposition to Fandom's motion that Plaintiff was not objectively unreasonable in asserting direct and vicarious infringement claims because it dismissed these claims "at the end of minimal discovery." Opp. at 14. This is inaccurate. The claims were not dismissed from the case until March 21, 2025, after six months of fact discovery and only about seven weeks before fact discovery closed on May 12, 2025. By then, Fandom had already expended considerable resources in pursuing discovery on both claims, including written discovery and deposition testimony, to defeat them. And as I explained in my declaration in support of Fandom's motion, Plaintiff did not dismiss the claims of its own accord or based on its own idea; it did so only after I laid out Fandom's summary judgment arguments defeating both. McHale Decl. ¶ 8, Ex. 2.

4. I understand from Plaintiff's opposition that it does not challenge the hourly rates of Fandom's attorneys submitted with Fandom's motion. I believe this further confirms the reasonableness of those rates. I also believe that is because Plaintiff's counsel's rates are comparable or higher than most of Fandom's timekeepers. **Exhibit 18** to this declaration is a true and correct PDF copy of an Excel spreadsheet I received from Plaintiff's counsel concerning costs Plaintiff purportedly incurred in seeking documents from Zendesk in the case—documentation Plaintiff's counsel sent *after* the time by which Plaintiff was

supposed to confer with Fandom about those costs. Exhibit 18 shows that the hourly rate of one of Plaintiff's attorneys, James Bartolomei, is $825.

5. I have reviewed Plaintiff's arguments in its opposition that I lack the personal knowledge necessary to lay foundation for the fees Fandom seeks for time spent on the case during my maternity leave. I believe this argument is unfounded. After I returned from leave, I resumed my role on the case. As part of resuming my responsibilities, I reviewed and became very familiar with all discovery that had been conducted in my absence, along with other case activities. I undertook this work not only to ensure I was familiar with what happened on the case in my absence, but also in preparation for taking and defending depositions in the case, managing the end and close of fact discovery, and taking lead on all aspects of preparing and filing Fandom's summary judgment motion. Thus, despite my leave, I have personal knowledge of the work performed on Fandom's behalf during my absence. In addition, my maternity leave, which ended in January, has no bearing on my personal knowledge of the time records I attached as Exhibit 8 to my opening declaration to Fandom's motion, since those records were derived from the firm's billing system and software, and I reviewed those records and assisted in preparation of Exhibit 8 (including redacting it to protect attorney-client privileged information) in advance of the filing of Fandom's motion in May.

6. I have reviewed Plaintiff's arguments in its opposition to Fandom's Motion challenging Fandom's costs in this case as "inflated, completely unnecessary, or poorly substantiated." Opp. at 24. Below, I address certain of those arguments here.

- Transcripts. These transcripts were necessarily obtained to show Magistrate Judge Mircheff's reasoning regarding Plaintiff's unreasonable and unfounded spoliation accusations against Fandom. We ordered the transcripts on an expedited basis because we needed to do so in order to obtain and review them before

making submissions to the Court to which they were relevant, including Fandom's opposition to Plaintiff's discovery motion and Fandom's motion for attorneys' fees. Relatedly, I am aware of Plaintiff's argument that these hearings "resulted in Fandom being sanctioned," but this is misleading. In those hearings, which I appeared at on behalf of Fandom (along with Mr. Bartolomei appearing and Mr. Hoben and new counsel Chris Gansen attending for MGPI), Magistrate Judge Mircheff expressed doubt that Plaintiff's accusations amounted to spoliation by Fandom—a conclusion she then confirmed in her order on the motion regarding those accusations. Magistrate Judge Mircheff also concluded that Fandom did not fail to comply with its initial disclosure requirements in declining to identify Zendesk. The only narrow ground on which Magistrate Judge Mircheff ruled in Plaintiff's favor is a finding that Fandom should have sought documents from Zendesk in discovery and that, because of that, Plaintiff could be awarded its costs incurred seeking such documents. But Plaintiff then failed to pursue those costs as ordered, and Magistrate Judge Mircheff subsequently declined to award them. Dkts. 90, 98, 103.

- ESI Expenses. Fandom incurred ESI consulting fees because, regardless of the number of pages produced by Plaintiff, the format of those productions made them very difficult to process and review, as set forth in my declaration in support of Fandom's Motion.

- Video Fees for Depositions. Fandom incurred video deposition fees for use at trial. At the time of the depositions, it was not clear which of Plaintiff's witnesses would attend an eventual trial, such that playing their testimony might have been necessary. Further,

even if the witnesses attended trial, the video depositions were necessary for potential use at trial for impeachment purposes, so that a jury could see the witnesses' testimony, rather than simply read or hear it, and thus be in a better position to assess credibility and veracity.

- <u>Travel Expenses</u>.  Fandom reasonably incurred expenses for my travel to Los Angeles for the week of May 12, during which I appeared at the hearing on Plaintiff's discovery motion and intended to appear at the May 16 hearing on Fandom's summary judgment hearing, before the Court entered summary judgment for Fandom on the papers and took that hearing off calendar.  I believe these expenses were reasonable.  I also understand Plaintiff has argued that the travel expenses should not be recovered because of Fandom's "choice to employ a lawyer based in Chicago, versus this District or anywhere else in California." Dkt. 94-15.  I am barred in California (and in this District, along with the Northern District of California),  where I grew up, went to college and law school, and spent the first several years of my practice, with a focus on copyright litigation as explained in my declaration in support of Fandom's Motion.  While I flew to Los Angeles from Chicago and not somewhere else in California (*i.e.*, the Bay Area, where our firm is based), I do not believe this renders the travel expenses sought unreasonable.  And I was surprised to see this argument, given my understanding that Plaintiff's counsel, Mr. Bartolomei and Mr. Hoben, both traveled to Los Angeles that same week for the same hearings, from Arkansas and New York, respectively, and attended the hearing and our pretrial meet and confer along with a third attorney for Plaintiff, Mr. Gansen.

1            7.      Lastly, I have reviewed Mr. Bartolomei's declaration and the email correspondence attached to it in which he suggests that I or my colleagues have acted in an uncivil manner toward him in this case, and that this is evident in email communications and objections at depositions. I disagree with this characterization of our communications. I have never resorted to name calling in this or any other case in my career, let alone calling another attorney stupid or otherwise belittling them. I believe that Mr. Bartolomei's complaints largely center on statements I have made to him throughout this case that positions Plaintiff has taken are unreasonable, unfounded, or do not make sense, such that I fail to understand them. Regarding objections and conduct at depositions, I and my colleagues have objected to questions or framing of issues as vague, ambiguous, or in some cases unintelligible, out of a genuine belief that the questions were just that and the objections thus well founded. I believe that the transcripts make this clear. This includes, for example, my objections to, and comment on, poorly formed and argumentative questions directed at George Marbulcanti, a lay witness for Fandom located in the United Kingdom, who certainly was not in a position to answer confusing questions about, for example, what "we'll let the jury decide" in this case. *See* Dkt. 106-5 at 32. In short, I (like my colleagues at the firm) take my professional responsibilities and my ethical obligations very seriously and have adhered to them throughout my work on this case, as I do in all of my cases.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 27, 2025.

                                             */s/Ciara McHale*
                                             Ciara McHale