James H. Bartolomei III (SBN 301678)
james@duncanfirm.com
DUNCAN FIRM, P.A.
809 W. 3rd Street
Little Rock, Arkansas 72201
Tel: (501) 228-7600

Peter E. Perkowski (SBN 199491)
PERKOWSKI LEGAL, PC
515 S. Flower Street
Suite 1800
Los Angeles, California 90071
Tel: (213) 340-5796

Attorneys for Plaintiff
MICHAEL GRECCO PRODUCTIONS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> FANDOM, INC. et al., <br><br> *Defendants*. | Case No.: 2:24-cv-05963-MWC (BFMx) <br><br> *Hon. Michelle Williams Court* <br><br> **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RECONSIDERATION** <br><br> Date: July 11, 2025 <br> Time: 1:30 p.m. <br> Place: 6A, First St. Courthouse <br><br> Complaint filed July 16, 2024 |

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION

Fandom knowingly and deliberately treats *all* incoming DMCA infringement notifications from unverified or unregistered email addresses as spam. It does nothing to prevent this, instead blindly relying on copyright holders to comply with a vague instruction in an acknowledgement email asking for verification. Nor does Fandom take any measures to locate legitimate infringement notifications that may be caught up in its self-imposed process.

The central legal question in this matter is whether a platform that hosts content uploaded by the platform's users may avoid knowledge of infringement, such that would support a claim for contributory infringement, by (1) implementing a system that diverts all emails from unverified and/or unregistered senders to a suspension queue, and (2) deliberately failing to check the queue despite being aware that legitimate and valid infringement notifications from unverified accounts would end up there.

The Court concluded that Fandom's excuse for implementing the system—to address spam—absolved it of liability because it was not a deliberate attempt to avoid acquiring knowledge. But the Court failed to analyze whether Fandom's other undisputed conduct—chiefly, deciding to ignore its queue that it had access to—was a deliberate attempt to avoid acquiring knowledge. The Court's failure to separately address this conduct was clear error and should be revisited without the need for an appeal.

Fandom's opposition misaddresses this issue in two ways. First, it selectively carves out a portion of a single sentence in the factual recitation of the Court's opinion—that "Fandom does not have a practice of reviewing" the queue—to argue that the Court considered the legal question of whether that practice satisfied the willful blindness standard. Second, Fandom argues that the separate conduct of not monitoring the queue is "immaterial" to the Court's finding of no willful blindness.

Fandom is wrong twice over. The Court began and ended its analysis on Fandom's motivation for implementing the verification spam filter, without evaluating Fandom's other material conduct. Reconsideration is warranted for that purpose.

In addition, the Court should consider the ruling's broader impact and effect on the DMCA notice-and-takedown framework. The statute mandates that copyright holders notify the service provider's designated copyright agent (via email or snail mail) to provide the service provider with "actual knowledge" of copyright infringement. Under the current ruling, however, sending valid email notice to the legally designated agent for the service provider is no longer sufficient. So long as a service provider is motivated by something other than avoiding knowledge, sending infringement notifications to the agent is no longer enough to satisfy the DMCA: copyright holders must also comply with additional service-provider-imposed obligations before compliant infringement notifications will even be considered received and reviewed. The Court should reconsider the ruling to avoid this inadvertent amendment of the DMCA statute that allows service providers to elevate their own processes over the statutory framework enacted by Congress.

## II.    ARGUMENT

**1. Fandom was reckless and had a reason to know that valid DMCA notices would go to the suspension queue.**

"To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011). *Louis Vuitton* has not been overruled:

> [E]ven if the "should have known" instruction was erroneous, the error was not plain. Inconsistency in our case law on the "knowledge" element of contributory liability precludes a finding of plain error. For instance, in *Luvdarts*, we held that "actual knowledge of specific acts of infringement" and "[w]illful blindness of specific facts" are the only two mental states that satisfy the "knowledge" element of contributory infringement.

2

> But in *Louis Vuitton*, we cited with approval a "know or have reason to know" instruction for contributory liability. … While *Luvdarts* was decided after *Louis Vuitton*, it did not explicitly overrule it.

*See Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 832 (9th Cir. 2019).

Thus, the knowledge element for contributory infringement liability can be proved based on recklessness or "reason to know."

The Court's summary judgment ruling was analyzed under willful blindness, but in doing so failed to consider all of Fandom's material conduct that would be relevant to that showing. Below, MGP highlights some of those facts, using the chart form that Fandom presented in its opposition. Willful blindness can be inferred from these facts as explained below, making summary judgment inappropriate.

| **Fact Cited in Motion** | **Fandom's Argument** |
|---|---|
| 1. Fandom makes the decisions on how the options are configured on its Zendesk platform. *See* Dkt. 64 ¶ 72 (Bart. Decl. at ¶4 (Marbulcanti Dep. 58:8-14). | • Considered in MSJ Order<br>• Immaterial to finding of no … willful blindness; any choices by Fandom regarding its configuration of the platform were due to spam attacks, not deliberate avoidance of knowledge of infringement. |
| 12. Fandom included copyright@wikia.com in the verification system despite not knowing whether it was a significant source of spam.  Dkt. 64 ¶ 112 and Dkt. 66-3 (Marbulcanti Dep. 161:8-13) | • Same objections as above<br>• Mischaracterizes the record |
| **Why these facts matter:** Fandom deliberately included copyright@wikia.com — its legally designated registered email address for copyright infringement notifications under the DMCA—in the verification system even though it did not testify whether that designated email address was a significant source of spam.<br><br>The inference in MGP's favor is that, unless it was a significant source of spam, including that email address in the verification system is a deliberate attempt to avoid knowledge. But the Court drew the inference in Fandom's favor (calling MGP's argument about this material fact "quibbling"), which is clear error. | |
| 3. Fandom does not monitor its Zendesk suspension queue even though it has access to it. | • Considered in MSJ Order [*Fandom citing a partial sentence in the recitation of facts*]<br>• Immaterial; lack of monitoring is due to spam [*which is pure argument, as* |

| **Fact Cited in Motion** | **Fandom's Argument** |
|---|---|
| | *the Court never made this conclusion*]. |
| 4, 5, 8-10. If a DMCA takedown notice email is sent to copyright@wikia.com [from an unverified or unregistered address] it goes to the suspension queue, where it is deleted after 14 days unless the sender verifies its email address or Fandom recovers [the Notice] from the queue. | • Considered in MSJ Order<br>• Immaterial; lack of monitoring is due to spam [*which is purely Fandom's argument, not undisputed facts, as the Court never made this conclusion*]. |
| **Why these facts matter:** Failure to monitor Fandom's queue, while knowing that DMCA infringement notifications from unverified email addresses would be sent to the queue, is separate conduct from the underlying decision to set up the spam filter. The Court's conclusion that Fandom's motivation to set up the spam filter absolved it of liability, even for this separate conduct, is clear error. Whether avoiding spam was a sufficient justification for not monitoring the queue under these circumstances is an inference in Fandom's favor, contrary to Rule 56 standards. ||
| 7. The suspended tickets view is visible to any Fandom agent with access to all emails in the suspended queue. Dkt. 64 at ¶ 86. | • Unsupported by admissible evidence in the record (only citation is to unfounded attorney testimony).<br>• Immaterial to Court's finding of no willful blindness: lack of monitoring of suspension queue was due to spam, not deliberate avoidance of knowledge of infringement. |
| **Why this fact matters:** Fandom's miscites the record; its witness testified that it was aware of the queue as November 2023 [before the Notices were sent]. Dkt. 66-3. (Marbulcanti Dep. 97:9-23)). The Court either failed to consider this material fact or resolved this fact supported by competent evidence in Fandom's favor. ||
| 8. Zendesk recommends that customers review the suspension queue. Dkt. 64 ¶ 90-9.1 | • Unsupported in the record (*while admitting that a Zendesk "help document" was in the record*).<br>• Immaterial; lack of monitoring is due to spam [which is pure argument, as the Court never made this conclusion]. |
| **Why this fact matters:** The Zendesk help document (which explains how the system Fandom chose to operate) recommends checking the queue every 14 days (because legitimate emails end up there). Failure to do so gives rise to an inference, in MPG's favor, that Fandom was avoiding knowledge of infringement. The Court resolved this inference in Fandom's favor, contrary to Rule 56 standards. ||

In sum, Fandom's deliberate decisions and conduct at issue here include much more than simply setting up a new spam filter just months before MGP started sending the first of 30 infringement notices. Fandom's deliberate conduct and decisions included other evidence from which a reasonable jury could infer willful blindness:

- Fandom subjecting copyright@wikia.com to its new spam system without knowing whether Fandom's only legally designated DMCA email address was a source of any spam;
- Drafting the text of Fandom's acknowledgement email sent in reply to notices to copyright@wikia.com with vague, opaque, and ambiguous language that did not clearly spell out the consequences of failing to "click" the verify link.  *See* Dkt. 67 ¶2, 67-1-3;
- Disregarding (or not even bothering to review) Zendesk's clear recommendations to monitor the suspension queue every 14 days, because, by inference, important, legitimate emails will end up in the queue and deleted if this queue goes unmonitored—e.g., DMCA takedown Notices, and
- Not monitoring the suspension queue to determine if legitimate emails (such as DMCA infringement notifications) were sent there.

The cumulative effect of Fandom's deliberate choices—choices it had reason to know or knew would likely result in valid, strictly compliant DMCA infringement notifications being missed—was to prevent those notices from ever being seen. Fandom knew, or had reason to know, that all copyright@wikia.com incoming emails from unregistered and "unverified" email senders would go to spam and be automatically deleted. Fandom's deliberate conduct, supported by numerous inferences based on circumstantial evidence and reasons to know, to prove willful blindness, should have gone to a jury. The Court short-circuited this possibility by only focusing on Fandom's alleged motivation for implementing the spam

5

verification system without taking into account all evidence (and effects of that evidence) of the other decisions Fandom made. This was clear error.

### 2. The DMCA statutory notification framework is relevant to proving willful blindness.

Fandom contends that the DMCA is wholly irrelevant to this motion because the Court never reached the safe harbor defense or why the DMCA notification framework matters. Dkt. 104 at 18. Fandom misses the point. While the Court did not reach the safe harbor defense to absolve Fandom, the DMCA framework is centrally relevant to the facts and law of this case—particularly, that MGP provided legal notices in strict compliance with the statute. Fandom bemoans all the ways that MGP could have provided notice; however, the only legally recognized method via email to put a service provider on notice and make them aware under the DMCA of actual instances of infringement is to send an emailed notice to the service provider's designated email address listed with the Copyright Office. The Court failed to recognize the import of the DMCA's statutory notification framework.

The DMCA relieves service providers of liability for copyright infringements that are unknown and not readily apparent. *See Perfect 10, Inc. v. CCBill, LLC*, 340 F. Supp. 2d 1077, 1086 (C.D. Cal. 2004), *aff'd in part, rev. in part, and remanded by* 488 F.3d 1102 (9th Cir. 2007). Because of this, the DMCA "requires that copyright owners inform internet service providers of infringements," *id.* (citing 17 U.S.C. §§ 512(c)(1)(A), 512(c)(3)). And "[t]o be effective … a notification of claimed infringement must be a written communication *provided to the designated agent of a service provider*," not someone else. 17 U.S.C. § 512(c)(3) (emphasis added); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1112 (9th Cir. 2007) (service provider "will not be deemed to have notice of infringement" unless there is substantial compliance with "all of § 513(c)(3)'s clauses"). While Fandom makes much of MGP's failure to attempt to notify Fandom of infringements by other various informal means, the only

legally, exclusively recognized method for providing electronic notice is the way that MGP did so—by emailing Fandom's legally designated agent under the DMCA.[1]

It follows that any conduct by a service provider that upsets or interferes with the DMCA's delicate balance and carefully calibrated framework envisioned by Congress—safe harbor in exchange for notice and expeditious removal—should be highly disfavored, or subjected to exacting statutory scrutiny. Such extra-statutory steps could include the ones that the Court here appears to bless: requiring copyright holders to verify their email addresses (through account registration or otherwise), diverting compliant DMCA notifications to a spam folder when the sender does not verify, and making the decision to not check its spam folder for DMCA notifications.

The Court never reached Fandom's DMCA safe-harbor defense or considered evidence through the lens of the DMCA's statutory takedown framework. Instead, it absolved Fandom of liability by effectively rewarding conduct that enabled Fandom to avoid obtaining actual knowledge of infringement. Likely rising to the level of manifest injustice, the Court inadvertently created judicially sanctioned interference with legally compliant DMCA takedown notifications. Under the ruling, it is no longer sufficient that a copyright holder simply send an email notice (with the required information under § 512) to a designated email address to provide a service provider actual knowledge of infringement under § 512(c); the copyright holder must also navigate any additional service provider system settings that have the effect of diverting such notices where they'll never be seen, or whatever other steps the service provider decides to impose. Taking into consideration the DMCA framework, the Court should grant the motion and reconsideration of its order.[2]

---

[1] MGP could have also mailed a hard copy each of the Notices via registered mail with proof of receipt (which it did not and was not required to). When Fandom legally received the hard copy Notices in their post office mailbox, they could claim to not have seen them and therefore allege no knowledge of infringement.

[2] There are many problems that result from layering Fandom's system requirements on top of the DMCA's statutory framework. With the Court's endorsement, compliant infringement notifications will never be viewed by anyone at Fandom, and Fandom will therefore never have actual notice of infringement, if a copyright holder fails to verify their email address for any number of reasons, including if Fandom's

### III.  CONCLUSION

For the reasons stated above, the Court should grant the motion and reconsider its decision on Fandom's motion for summary judgment.

Dated: June 27, 2025              Respectfully submitted,

**DUNCAN FIRM, P.A.**

By:  */s/ James Bartolomei*
James Bartolomei

Attorneys for Plaintiff MICHAEL GRECCO PRODUCTIONS, INC.

### ATTESTATION PURSUANT TO L.R. 11-6.1

The undersigned, counsel of record for Plaintiff MICHAEL GRECCO PRODUCTIONS, INC., certifies that this brief contains 2,442 words, which complies with the word limit of L.R. 11-6.1. It also does not exceed 12 pages, pursuant to Section 6(c) of the Court's standing order.

By:  */s/ James Bartolomei*
James Bartolomei

Attorneys for Plaintiff MICHAEL GRECCO PRODUCTIONS, INC.

---

acknowledgement email is misunderstood, is never received, is forgotten, is inadvertently overlooked, or is caught in the copyright holder's own spam filter.